<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| **UNITED STATES OF AMERICA**, <br><br> v. <br><br> **CHRISTOPHER WARD DEMBA**, <br><br> Defendant. | Criminal Action No. 25-32 (ZNQ) <br><br> **OPINION** |

<u>**QURAISHI, District Judge**</u>

**THIS MATTER** comes before the Court upon a Motion for Acquittal filed by Defendant Christopher Ward Demba ("Defendant") on November 6, 2025.  (ECF No. 87.)  Defendant filed a memorandum of law in support of his Motion.  ("Moving Br.," ECF No. 87-1.)  The Government filed an Opposition ("Opp.," ECF No. 89), to which Defendant replied (ECF No. 90).  For the reasons set forth below, the Court will **GRANT** Defendant's Motion.

## I.      <u>BACKGROUND AND PROCEDURAL HISTORY</u>

### A.      **Procedural History**

On January 16, 2025, Defendant was indicted in the District of New Jersey on fifty-five counts of violating 26 U.S.C. § 7206(2) (aiding and assisting in the preparation of false tax returns) and one count of violating 26 U.S.C. § 7212(a) (attempt to interfere with the administration of the internal revenue laws).  (ECF No. 1.)  Ten months later, on October 15, 2025, Defendant's jury trial began.  (ECF No. 55.)  At the close of the Government's case-in-chief, the Government moved to dismiss Counts 1 to 4, 7 to 10, 12 to 17, 24 to 32, 37 to 45, 47 to 49, and 54 to 55.  ("Trial Tr.",

ECF Nos. 82–86 at 285:13–15.)[1] Defendant also moved for an acquittal under Rule 29(a) of the Federal Rules of Criminal Procedure, primarily arguing that the Government failed to prove beyond a reasonable doubt that Defendant acted with the specific intent to violate a known legal duty. (*Id.* at 291:2–14.) The Government opposed the motion, arguing that a reasonable jury could find Defendant guilty beyond a reasonable doubt. (*Id.* at 301:21–25.) The Court reserved its decision on that motion to give the jury an opportunity to reach a verdict. (*Id.* at 303:22.) Following the Court's decision to reserve on the Rule 29 motion, Defendant testified in his own defense. (*Id.* at 310:3–4.) The trial concluded only after a few days and on October 20, 2025, the Court dismissed the jury to begin its deliberations. (*Id.* at 494:23–24.)

On October 23, 2025, the jury informed the Court that it could "not come to a unanimous vote even with further deliberation." (*Id.* at 575:1–4.) The Court then instructed the jury to return to the jury room and continue its deliberations, noting that the jury should take as much time as they needed to reach a unanimous verdict. (*Id.* at 580:22–581:25.) Several hours later, the jury informed the Court that even after further deliberations, all nineteen charges remained split and that they did not expect to be able to reach a unanimous decision. (*Id.* at 582:15–22.) The Court then informed both the Government and Defendant that it was inclined to declare a mistrial. (*Id.* at 582:23–583:3.) The Government objected, arguing that the Court should require the jury to continue deliberations because they had only been deliberating for 10.5 hours.[2] (*Id.* at 585:9–14.) Defendant requested the Court to declare a mistrial. (*Id.* at 586:10–20.) At that point, the Court called the jury back into the courtroom and asked the foreperson whether she believed there was a reasonable probability that the jury could arrive at a unanimous verdict. (*Id.* at 589:11–22.) The

---

[1] The transcripts of the trial are on consecutive paginated pages at ECF Nos. 82–86.
[2] The jury had deliberated for 10.5 hours because on October 22, 2025, an alternate juror replaced a dismissed juror, and at that point the Court instructed the jury to begin its deliberations anew. (Trial Tr. 543:14–25.)

2

foreperson informed the Court that she believed the jury could not reach a unanimous verdict (*id.* at 589:23), and each individual juror agreed with her (*id.* at 590:1–591:15). The Court then asked whether the Government maintained its objection to declaring a mistrial, to which the Government said that it did, given the short duration of jury deliberations. (*Id.* at 592:3–17.) The Court noted the objection, but nevertheless declared a mistrial, stating that it was clear the jury could not reach a unanimous verdict even after receiving the deadlocked jury instruction. (*Id.* at 593:3–13.) The Court then set a schedule for the Rule 29 motion to be briefed and instructed the parties to focus on the evidence presented at the conclusion of the Government's case and the Defendant's case. (*Id.* 594:8–22.)

**B.     Background**

Defendant is a certified public accountant and is a solo practitioner at his own accounting firm. (Trial Tr: at 311:8–22.) Defendant works out of a house, which he splits with an unrelated business, and does not have any other accountants or staff to help him. (*Id.* at 45:4–21.) He charges his clients a flat fee, depending on the complexity of the tax returns, and that fee ranges between $200 to $1,500. (*Id.* at 50:15–19; 81:4–5; 94:20–21.) According to the Government, Defendant submitted false tax returns to the Internal Revenue Service ("IRS") on behalf of his clients between 2018 and 2022, in which he falsely claimed the alternative minimum tax ("AMT") credit for his clients so that they would owe less in taxes. The AMT is a tax that requires certain taxpayers, usually high-income individuals, to pay a minimum level of tax despite deductions and credits. (Trial Tr. at 216:21–217:2.) If an individual pays AMT in one year, however, that individual may be able to use some of that paid AMT as a credit to offset their tax liability in a future year (the "AMT Credit"). (*Id.* at 218:22–219:5.) The AMT Credit therefore reduces an individual's overall tax liability in the future year on a dollar-for-dollar basis. (*Id.* at 159:6–9.)

As might be expected, the AMT and AMT Credit are complex.  Indeed, IRS Revenue Agent Thomas Mazur testified that this is one of the more difficult areas of tax law, and the Government even had to enter into a stipulation on the law after Mr. Mazur testified incorrectly on the subject. (*Id.* at 219:18–19; 274:15–23.)  As the evidence established at trial, AMT may consist of two separate items: (1) deferral items and (2) exemption items.  (*Id.* at 219:6–8.)  Only the amount of AMT paid that relates to the deferral items can be carried forward and used as an AMT Credit in a subsequent year.  (*Id.*)  In other words, not all the AMT an individual has paid in one year may be carried forward and used as an AMT Credit in a subsequent year.  (*Id.*)

There are two forms the IRS uses to calculate the AMT and the AMT Credit.  The first is Form 6251, which is the Alternative Minimum Tax form.  (*Id.* at 127:4–9.)  The second is Form 8801, which is the Credit for Prior Year Minimum Tax form.  (*Id.* at 127:10–18.)  Form 8801 is a form that taxpayers use to figure out if they paid AMT in a prior year and whether they qualify for the AMT Credit in the current year.  (*Id.*)  Line 19 on Form 8801 has an instruction that states: "Enter the amount from your [prior year] Form 8801, line 26."  (*Id.* at 163:10–12.)  Stated differently, line 19 requires a taxpayer to look at the prior year's Form 8801, line 26, and put that amount on line 19 for the current year.  Line 26 simply states "Credit carryforward to [subsequent year]."  (*Id.* at 76:12–13.)

As the Government established at trial, Defendant prepared and submitted to the IRS multiple Forms 8801 on behalf of his clients.  The crux of the Government's case stems from Defendant's failure to follow the line 19 instruction.  Instead of providing the amount from line 26 of the prior year, Defendant would provide a different number, which resulted in his clients either paying less in taxes or receiving a refund.  For example, on R.E.'s 2018 tax return, Defendant

4

entered an amount of $49,836 on line 19. [3] (*Id.* at 77:12–13.) However, line 26 from the prior year only listed $10. (*Id.* at 76:12–17.) This discrepancy occurred for a handful of Defendant's clients, as established through witness testimony, exhibits, and the below summary chart:

| Taxpayer Client | 2017 Form 8801, Line 26 | 2018 Form 8801, Line 19 |
|:---:|:---:|:---:|
| M.B. | $2,808 | $117,299 |
| R.E. | $10 | $49,836 |
| T.S. | $1,297 | $47,224 |
| P.K. | Not Filed | $61,023 |
| R.M. | Not Filed | $78,285 |
| N.I. | Not Filed | $14,796 |

(Ex. RM112.) The incorrect AMT Credit was not used solely in tax year 2018. Instead, Defendant carried forward and applied the incorrect AMT Credit to subsequent tax years, causing those returns to also contain false information and improperly reduce Defendant's clients' tax liability in those years. (*Id.*)

On May 30, 2018, Defendant received a letter from the IRS stating that they were "investigating [Defendant's] possible involvement in tax avoidance transactions or [Defendant's] tax return preparation practices." (Ex. RM21 at 1; *see also* Trial Tr. 129:17–21.) The letter was broad and did not specify which tax forms or calculations were being investigated. (*See generally* Ex. RM21.) Several years later, on September 5, 2023, Mr. Mazur, the IRS Revenue Agent, sent another letter, this time to Defendant's client R.M. (Ex. RM106C.) This letter requested information related to the AMT Credit taken by R.M. (*Id.* at 1.) In response, Defendant sent a

---

[3] The Court uses the initials of Defendant's clients to protect their privacy.

letter to Mr. Mazur explaining his AMT Credit calculations.  (Ex. 106A; *see also* Trial Tr. 165:1–16.)  Importantly, Defendant also noted that in 2018 the law governing the AMT changed (Trial Tr. 167:18–21), which Mr. Mazur confirmed during his testimony (*id.* at 167:24–168:1).

With respect to Defendant's AMT Credit calculations, he detailed the amount of AMT Credits for R.M. from 2002 to 2016.  (Ex. RM 106A at 24.)  However, Mr. Mazur noted that these numbers and calculations were incorrect because the AMT Credit did not match the AMT paid for deferral items.  (Trial Tr. 170:3–4.)  Mr. Mazur testified that he tried to determine the source of these numbers, and he ultimately concluded that some of these numbers matched the total AMT paid by R.M.  (*Id.* at 170:23–171:3.)  However, there were even discrepancies in a few instances between the numbers Defendant provided and the AMT actually paid by R.M.  (*Id.* at 171:5–15.)  Mr. Mazur further testified to other instances in which Defendant detailed the amount of AMT Credits, and in those instances some of the numbers also did not match the total AMT paid by the taxpayer.  (*Id.* at 185:6–8; 204:6–10; 205:13–206:17.)

Defendant also testified in his own defense.  He stated that he believed he could use all the AMT an individual had paid and use that as an AMT Credit in a future year.  (*Id.* at 316:16–21.)  His view was reinforced when, during audits of Defendant's clients, the IRS did not question Defendant's calculation or methodology for the AMT Credit.  (*Id.* at 81:20–25; 98:11–21; 112:11–13; 317:4–11.)  Defendant further explained that in 2018, the way in which AMT was calculated changed.  (*Id.* at 316:6–11.)  He also testified that there was confusion on how to calculate the amount of AMT an individual had paid in prior years because of issues he had with his tax software.  (*Id.* 315:15–316:3.)  According to Defendant, prior to 2018 the e-filing software did not allow individuals to e-file Form 6251 and Form 8801, unless the individual did not owe AMT (and

therefore could claim the AMT Credit) or in unique circumstances where an individual was subject to the AMT and could also claim an AMT Credit. (*Id.* at 330:3–5; 331:9–18.)

## II.    SUBJECT MATTER JURISDICTION

The Court has jurisdiction over this case pursuant to 18 U.S.C. § 3231.

## III.    LEGAL STANDARD

Under Federal Rule of Criminal Procedure 29, "a defendant may move for a judgment of acquittal" after a jury has returned a verdict or been discharged. Fed. R. Crim. P. 29(c)(1). In ruling on such a motion, "a district court must review the record in the light most favorable to the prosecution to determine whether any rational trier of fact could have found proof of guilty beyond a reasonable doubt based on the available evidence." *United States v. Brodie*, 403 F.3d 123, 133 (3d Cir. 2005) (citation modified). Where applicable, "[t]he court is required to draw all reasonable inferences in favor of the jury's verdict." *United States v. Smith*, 294 F.3d 473, 476 (3d Cir. 2002) (citation modified). Moreover, a court should not "usurp the role of the jury by weighing credibility and assigning weight to the evidence, or by substituting its judgment for that of the jury." *Brodie*, 403 F.3d at 133. Thus, a court should only find the evidence to be insufficient "where the prosecution's failure is clear." *Smith*, 294 F.3d at 477 (quoting *United States v. Leon*, 739 F.2d 885, 891 (3d Cir. 1984)).

## IV.    DISCUSSION

At the conclusion of the trial, the jury was charged with deciding eighteen counts of aiding and abetting in the false preparation of tax returns in violation of 26 U.S.C. § 7206(2) and one count of corruptly endeavoring to obstruct or impede the due administration of the internal revenue laws in violation of 26 U.S.C. § 7212(a). The Court will discuss each of those counts below.

7

### A.   Aid or Assistance in the Preparation of False Tax Returns

After a review of the evidence presented at trial and drawing all favorable inferences in favor of the Government, the Court finds for the reasons below that the Government has failed to present evidence sufficient to sustain a conviction under 26 U.S.C. § 7206(2).

Pursuant to 26 U.S.C. § 7206(2), the Government must establish: "(1) that defendant aided, assisted, procured, counseled, advised or caused the preparation and presentation of a return; (2) that the return was fraudulent or false as to a material matter; and (3) that the act of the defendant was willful." *United States v. Gambone*, 314 F.3d 163, 174 (3d Cir. 2003). "As for willfulness, to establish a willful violation of the tax code, the government must prove 'the voluntary, intentional violation of a known legal duty.'" *United States v. Favato*, 533 F. App'x 127, 131 (3d Cir. 2013) (quoting *United States v. McKee*, 506 F.3d 225, 236 (3d Cir. 2007)); *see also United States v. Miller*, 595 F. App'x 166, 168 (3d Cir. 2014) ("Willfulness in the criminal tax context requires a showing that the law imposed a duty on the defendant, that the defendant knew of this duty, and that he voluntarily and intentionally violated that duty."). The government may prove willfulness through direct or circumstantial evidence. *See United States v. Ringwalt*, 213 F. Supp. 2d 499, 504 (E.D. Pa. 2002) (finding willfulness where, among other evidence, the defendant consistently underreported large amounts of income). "Where a defendant proves that he had a good faith belief that he was not violating the tax code, regardless of whether that belief was objectively reasonable, he has established that he did not act willfully." *United States v. DeMuro*, 677 F.3d 550, 557 (3d Cir. 2012). As the Supreme Court held in *Cheek v. United States*, "carrying this burden requires negating a defendant's claim of ignorance of the law or a claim that because of a misunderstanding of the law, he had a good-faith belief that he was not violating any of the provisions of the tax laws." 498 U.S. 192, 202 (1991). This requirement accounts for the

complexity of the tax system, in which "uncertainty often arises even among taxpayers who earnestly wish to follow the law, and it is not the purpose of the law to penalize frank difference of opinion or innocent errors made despite the exercise of reasonable care." *Cheek*, 498 U.S. at 205 (citation modified).

Defendant only disputes the adequacy of the Government's evidence with respect to the element of his purported willfulness. (Moving Br. at 4.) Defendant cites the Government's lack of testimony from his clients: none of his clients testified that they paid additional fees, received or paid kickbacks, were told Defendant had a "special method" for reducing their taxes, or were even aware of the AMT and AMT Credit. (*Id.* at 5.) Defendant objects to the Government's reliance on Defendant's failure to properly calculate AMT as insufficient to demonstrate that he acted willfully. (*Id.*) The Government responds that it established Defendant's willfulness through circumstantial evidence, including his experience as a certified public accountant, his failure to follow the clear and unambiguous instructions on line 19 of IRS Form 8801, and his inconsistent statements during his testimony. (*Id.* at 7–10.)

In short, the Government's entire case rests on Defendant's failure to follow the line 19 instruction and input a number that did not match line 26 from the prior year. Undoubtedly, the Government established that Defendant did not follow this instruction (*see* Ex. RM112), which according to the Government is enough for a rational jury to infer that Defendant voluntarily and intentionally violated a known legal duty. (Opp. at 8–9.) The Government, however, had to show more: it needed to negate Defendant's "good-faith belief that he was not violating any of the provisions of the tax laws." *Cheek*, 498 U.S. at 202.

At trial, there was no evidence to contradict Defendant's asserted belief that he could add up all the AMT an individual previously paid and apply that as an AMT Credit. There was also

9

no evidence that Defendant was notified, much less counseled or advised that his method was incorrect. On the contrary, there was evidence that several of Defendant's clients were audited, and the IRS did not question Defendant's AMT Credit calculation or methodology. (*Id.* at 81:20–25; 98:11–21; 112:11–13; 317:4–11.) There was also no evidence to suggest that Defendant conspired with any of his clients to get them higher tax returns or that Defendant charged his clients higher fees in exchange for getting them a larger tax return. In fact, his clients' unrebutted testimony uniformly indicated the opposite.[4] (*Id.* at 47:4–14; 83:3–5; 98:7–9; 111:12–16; 120:4–11; 317:4–11.)

To negate Defendant's good-faith belief, the Government contends that Defendant failed to apply his methodology uniformly across all clients and argues that this inconsistency demonstrates his awareness that the methodology was flawed. (Opp. at 10.) In support, the Government argues that Defendant used two different methodologies in 2015 for clients P.C. and M.B. (*Id.*) For P.C.'s 2015 tax return, Defendant calculated the total amount of AMT and applied that as a credit. (*See* DM12A; PC2 at 5, 16.) But on M.B.'s 2015 return, M.B. did not claim the AMT Credit, and in fact, owed AMT that year. (*See* MB4 at 14, 28.) Under these circumstances, it is unclear how a reasonable juror could infer that Defendant employed a different methodology to calculate M.B.'s 2015 AMT Credit when no AMT Credit was claimed at all (and therefore no methodology was employed).

The Government also contends that Defendant's reliance on the tax law change in 2018 is unsupported because he was applying his incorrect methodology prior to 2018. (Opp. at 10–11.)

---

[4] There was also no evidence at trial to demonstrate that Defendant benefitted from this alleged scheme. This lack of motive, while not an element of the offense, further undermines the Government's assertion that the circumstantial evidence presented at trial is sufficient for a rational jury to find Defendant acted willfully. *Cf. United States v. Phillips*, 155 F.4th 102, 127 (2d Cir. 2025) (holding that while intent and motive are distinct concepts, motive may be probative of criminal intent).

But the tax law change in 2018 was not the sole reason Defendant cited for his mistake.  Rather, the evidence at trial demonstrated that the tax law changes only compounded Defendant's confusion and caused delays in his ability to e-file in 2018.  Critically, and as explained above, what the Government failed to negate was Defendant's good faith belief that the methodology he employed to calculate the AMT Credit was incorrect and that Defendant did not believe he could apply that credit for his clients in 2018.  Again, there was no evidence that Defendant was advised or had reason to believe his methodology was wrong.  *See United States v. Fumo*, Civ. No. 06-319, 2009 WL 1688482, at \*22 (E.D. Pa. June 17, 2009) (denying a motion for judgment of acquittal where the defendant directed employees to disguise political expenditures on the company's tax return to avoid jeopardizing its nonprofit status).  There was no evidence that he discussed with his clients ways in which they could evade taxes.  *See Favato*, 533 F. App'x at 131 (holding that the defendant acted willfully when he coached his client on how to evade taxes); *United States v. Glick*, Civ. No. 11-160-1, 2012 WL 13538 \*2 (E.D. Pa. Jan. 4, 2012) (finding sufficient evidence of willfulness, where, among other things, the defendant knew his client was underreporting income and the defendant fabricated management fees to hide that income); *United States v. Desu*, Civ. No. 18-613, 2020 WL 5630003, at \*3 (D.N.J. Sept. 21, 2020) (finding willful intent where the defendant coached his client on ways to hide income).  There was also no evidence Defendant charged those clients more money or retained any of the tax refunds for himself.  *See United States v. Johnson*, 682 F. App'x 118, 123 (3d Cir. 2017).

Rather, the evidence only established that Defendant consistently applied the same methodology to calculate the AMT Credit in an area of tax law that is particularly complex and that the Government itself confused at trial.  *See Cheek*, 498 U.S. at 205 (holding that it is not the purpose of the tax laws to penalize innocent errors).  Indeed, the Government's confusion

11

regarding the very tax law that forms the basis of its charges against Defendant actually supports the inference that Defendant made a mistake, given how complex and confusing this area of law is.

The Government also contends that because Defendant did not follow the line 19 instruction in 2018, but did so in subsequent years, a rational jury could infer that Defendant acted willfully. (Opp. at 8, 12.) As previously explained, in 2018 Defendant aggregated the AMT paid by his clients and treated that total as the AMT Credit. He then carried that AMT Credit forward and applied it in subsequent years, this time following the line 19 instruction, which resulted in those returns containing inaccurate information from the original 2018 calculation. The relevant question, however, is not whether Defendant knew how to follow the line 19 instruction, but whether he knew that his AMT Credit calculations were incorrect at the time he made them. While a rational jury could certainly infer that Defendant knew how to follow the line 19 instruction, there was no evidence from which a rational jury could infer beyond a reasonable doubt that Defendant intentionally reported incorrect amounts on the original 2018 tax returns. Absent evidence that Defendant knew his 2018 calculation was wrong when he prepared those returns, no rational jury could find Defendant guilty beyond a reasonable doubt of violating 28 U.S.C. § 7206(2). [5] *See United States v. Lindstrom*, 222 F.2d 761, 764 (3d Cir. 1955) (granting judgment

---

[5] By comparison, the Government's evidence in this case falls well short of the evidence presented in other Third Circuit cases in which courts found the evidence presented at trial sufficient to sustain a conviction under 28 U.S.C. § 7206(2). For example, in *United States v. Gambone*, the evidence at trial established that the defendants paid their employees' overtime wages from a nonpayroll account, failed to withhold taxes from those wages, were advised that their conduct violated the tax code, and encouraged employees not to report the overtime income with the IRS. 314 F.3d at 174–75. Similarly, in *United States v. Miller*, the defendant concealed funds from his accountant and reported only $265,198 on his individual tax return despite having a total compensation of $510,947. *See* 595 F. App'x at 169. The evidence also showed that the defendant used two separate bank accounts to conceal his income from his accountant. *Id.*; *see also United States v. Bunchuk*, 799 F. App'x 100, 106 (3d Cir. 2019) (finding willfulness where the defendant falsely claimed personal expenses for luxury vehicles and ski trips as business deductions). Finally, in *United States v. Johnson*, the Third Circuit upheld the verdict, agreeing that the Government proved willfulness beyond a reasonable doubt where the defendant provided a client with one version of a tax return, submitted a falsified return to the IRS, and retained the resulting tax refund for himself. 682 F. App'x at 123.

of acquittal where the evidence at trial established nothing beyond an understatement of income on the defendant's tax returns).

**B.      Obstruction of a Tax Investigation**

To demonstrate obstruction under 26 U.S.C. § 7212(a), "the Government must establish (1) corruption, force, or threat of force, and (2) an attempt to obstruct the administration of the IRS." *United States v. Crim*, 451 F. App'x 196, 201 (3d Cir. 2011).  "An act is 'corrupt' within the meaning of Section 7212 if it is performed with the intention to secure an unlawful benefit for oneself or for another."  *Id.*  Moreover, the Government must prove a "nexus" between the defendant's obstructive conduct and the particular tax-related action or proceeding.  *See Marinello v. United States*, 584 U.S. 1, 4, 13–14 (2018).

Here, the Government contends that the IRS began auditing Defendant's tax practices in 2018, and that eventually the IRS focused their inquiry on Defendant's use of the AMT Credit. (Opp. at 13.)  As established at trial, Defendant, in response to the IRS inquiry, sent the IRS various schedules purporting to show how he calculated the AMT Credit for his clients (i.e., by adding up all the AMT a client had paid).  (*Id.*)  However, not all of the AMT numbers Defendant provided to the IRS were correct.  Because some of those numbers were incorrect, the Government contends that Defendant must have acted corruptly.  (*Id.* at 16–17.)

As with the Government's aiding-and-abetting counts, even viewing its evidence in the most favorable light, the Government failed to present evidence from which a rational jury could find that Defendant acted corruptly.  The Government's theory relies on the inference that because certain figures were inaccurate, Defendant must have acted with corrupt intent.  That inference, however, does not follow.  The fact that some numbers were incorrect does not, by itself, establish that Defendant intended them to be false.

On the contrary, the trial evidence established that AMT calculations involve a particularly difficult area of the tax law.  (Trial Tr. at 219:18–19; 274:15–23.)  In that context, the mere presence of inaccuracies, without more, does not support an inference of corrupt intent.  Moreover, the fact that the majority of the figures Defendant reported were correct further undermines any assertion of corrupt intent and is consistent with mistake rather than intentional wrongdoing.  The Government also presented no evidence that it asked Defendant how he arrived at the inaccurate amounts or showing that Defendant knew they were inaccurate at the time he provided them to the Government.  Instead, the Government relies solely on the existence of inaccurate figures in a calculation that the Government itself acknowledged is among the most difficult areas of tax law.  That showing is insufficient for any rational jury to find beyond a reasonable doubt that Defendant is guilty of violating 26 U.S.C. § 7212(a).

## V.    CONCLUSION

The Court is aware that the Government may be unable to appeal this decision and re-prosecute Defendant without violating the Fifth Amendment's double jeopardy prohibition. *See United States v. Martin Linen Supply Co.*, 430 U.S. 564, 575 (1977). The Court has therefore thoroughly and repeatedly reviewed this trial record. Based on that review, the Court finds it cannot allow Defendant to be retried simply because the Government may have no recourse from this decision. Accordingly, for the reasons stated above, the Court will **GRANT** Defendant's Motion and enter a corresponding Judgment of Acquittal. An appropriate Order and Judgment will follow.

Date: February 13, 2026

s/ Zahid N. Quraishi
**ZAHID N. QURAISHI**
**UNITED STATES DISTRICT JUDGE**

15